```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
_____
                                    )
DYNOCOM INDUSTRIES, INC.,            )
                                    )
                  Plaintiff,         )
                                    )
v.                                   )    Civil Action
                                    )    No. 23-cv-12648-PBS
MAGICMOTORSPORT S.R.L.,              )
                                    )
                  Defendant.         )
                                    )
_____ )
```

## ORDER

September 8, 2025

Saris, J.

On August 6, 2025, the Court held a Markman hearing in this lawsuit brought by Plaintiff Dynocom Industries, Inc. ("Dynocom") alleging that Defendant Magicmotorsport s.r.l. ("MMS") is infringing U.S. Patent No. 8,505,374 ("the '374 patent"). After the hearing, the Court enters this order construing terms in the '374 patent. See Grace Instrument Indus., LLC v. Chandler Instruments Co., 57 F.4th 1001, 1008 (Fed. Cir. 2023) (describing principles of claim construction).

First, the parties have agreed to the following constructions, which the Court adopts:

1. "load shaft" means "a shaft to which power can be transferred from the drive shaft";

   2. "hub coupling" means "a device designed to allow a mechanical connection to the drive shaft";

   3. "connected directly" means "fixed securely";

   4. "fixed positions" means "two or more fixed positions";

   5. "arm locks" means "devices capable of securing the support arms in a fixed position"; and

   6. "support feet assemblies" means "two or more assemblies that engage the floor or ground surface located beneath the dynamometer for support."

Dkt. 67 at 2.

Second, the parties initially disputed the construction of the term "co-axially rotate":

| Dynocom's Construction | MMS's Construction |
|---|---|
| "rotate on a common axis that includes an alignment tolerance suitable for the dynamometer application" | "to rotate around a single common axis" |

Id. At the Markman hearing, however, Dynocom conceded that MMS's construction is acceptable. See Dkt. 70 at 30. The Court therefore construes "co-axially rotate" as "rotate around a single common axis."

Third, the parties dispute the construction of the term "outwardly extending support arm":

| Dynocom's Construction | MMS's Construction |
|---|---|
| "support arm that is capable of extending outward from the frame to provide a wider footprint" | "support arm capable of extending outward from the frame to provide a wider footprint and provide leverage for torsional forces" |

Dkt. 67 at 2. Both proposed constructions improperly "import[] limitations from the specification into the claims." MTD Prods. Inc. v. Iancu, 933 F.3d 1336, 1342 (Fed. Cir. 2019) (alteration in original) (quoting Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc)); see '374 patent at 5:54-56 ("Support arms are extended to provide a wider footprint for the [dynamometer] and assist in providing leverage for the torsional forces when in use."). Contrary to MMS's argument, the language in the specification regarding the support arm's provision of leverage for torsional forces is not an "expression[] of manifest exclusion or restriction, representing a clear disavowal of claim scope." IQRIS Techs. LLC v. Point Blank Enters., Inc., 130 F.4th 998, 1004 (Fed. Cir. 2025) (quoting Cont'l Cirs. LLC v. Intel Corp., 915 F.3d 788, 797 (Fed. Cir. 2019)). Accordingly, the Court construes the term "outwardly extending support arm" consistent with its plain and ordinary meaning as "support arm capable of extending outward from the frame."

Finally, the parties dispute the construction of the term "secured to":

| Dynocom's Construction | MMS's Construction |
| --- | --- |
| "connected to with or without intervening parts" | "fixed or attached to, so as to not come apart from" |

Dkt. 67 at 2. The parties agree that the first part of their respective constructions -- "connected to" versus "fixed or attached to" -- are essentially synonymous. See Dkt. 39 at 15; Dkt. 44 at 15. As neither party argues that "secured to" is a term of art in the field or used idiosyncratically in the '374 patent, the Court may consult "general purpose dictionaries." Phillips, 415 F.3d at 1314. The plain and ordinary meaning of "secure" is "to make firm or fast, as by attaching," Secure, Random House Unabridged Dictionary 1731 (2d ed. 1993), or "[t]o fix or attach (something) so as not to become loose, give way, fall off, or come apart," Secure, Oxford English Dictionary, https://www.oed.com/dictionary/secure_v?tab=meaning_and_use#23684520. In line with these definitions, the Court construes "secured to" as "fixed or attached to." MMS concedes that the phrase "so as to not come apart from" in its construction is surplusage, see Dkt. 43 at 7, so the Court does not include it.

The parties disagree as to whether the term "secured to" encompasses circumstances when two components are attached to each

4

other via intervening parts. The parties focus on a limitation in claim 1, which requires "a hub coupling secured to a first end of [the] load shaft." '374 patent at 6:28 (emphasis added). Dynocom argues that this limitation is satisfied even when there are intervening parts between the hub coupling and the end of the load shaft, while MMS asserted for the first time at the Markman hearing that the two components must touch one another.[1]

The Court rejects MMS's assertion that the term "secured to" requires that the two components touch one another. The term in ordinary parlance does not imply that the two attached objects are touching. As an example of the word "secure," Merriam-Webster offers the phrase "secure a bike to a tree." Secure, Merriam-Webster, https://www.merriam-webster.com/dictionary/secure. This phrase could readily refer to attaching a bike to a tree with a bike lock even if the bike is not touching the tree.

The intrinsic evidence confirms this understanding of the term. MMS emphasizes that Figure 8, which provides "a longitudinal section view of the quick connect," shows the end of the load shaft (16) touching the hub coupling (18). '374 patent at 4:40; see id. at fig. 8. But Figure 9 depicts an embodiment of the invention

---

[1] In its briefing, MMS argues only that Dynocom's inclusion of the phrase "with or without intervening parts" in its construction is surplusage and that the term "secured to" could not refer to "two parts on completely different edges of the [dynamometer]." Dkt. 39 at 16.

5

with intervening parts between the hub coupling and the end of the load shaft. See id. at fig. 9. Specifically, Figure 9 shows the two components separated by a "double universal joint 20." Id. at 4:50-56, fig. 9.

    MMS argues that the load shaft in Figure 9 touches the hub coupling through the double universal joint, but this interpretation of the figure is inconsistent with the specification's description. The shafts depicted in the figure are the "first end" and "second end 188" of the double universal joint, not the load shaft. Id. at 4:53-54. The specification explains that the "first end has a hub coupling 18 mounted thereto" and that the "second end 188" is meant to "coupl[e] to . . . the exterior of the end 82 of the load shaft 16." Id. at 4:54-56. This explanation indicates that the ends of the joint depicted in the figure are distinct components from the load shaft. Moreover, the purpose of the double universal joint is "to provide two degrees of movement for misalignment." Id. at 4:50-53; see id. at 6:7-9 ("The [dynamometer] can change angle to allow for misalignment in the vehicle[']s suspension . . . ."). Because the specification describes an embodiment in which the hub coupling and load shaft are attached to one another via an intervening part, a person of ordinary skill in the art would not understand the term "secured to" to require that the two components touch. See Google LLC v. EcoFactor, Inc., 92 F.4th 1049, 1058 (Fed. Cir. 2024) (explaining

6

that courts "normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification" (quoting Oatey Co. v. IPS Corp., 514 F.3d 1271, 1276 (Fed. Cir. 2008))).

The patent also describes two other components as "secured to" each other even though at least one intervening part separates them. In the description of Figure 6, the specification explains that "[t]he stator coils 94 are secured to the mounting ring 92." '374 patent at 4:14-15 (emphasis added). Figure 6 shows at least one component, the "[s]tator gap adjustment sleeves 96," between the stator coils and the mounting ring. Id. at 3:48; see id. at fig. 6. Elsewhere, the specification confirms that the "[s]tator gap adjustment sleeves 96 secure the stator coils 94 to the mounting ring 92." Id. at 3:48-49. MMS does not dispute that the patent uses the term "secured to" in this context to describe two components with at least one intervening part but argues that this example is irrelevant to ascertaining the meaning of "secured to" in the limitation in claim 1 requiring "a hub coupling secured to a first end of [the] load shaft." '374 patent at 6:28. Claim terms are, however, presumed to have the same meaning throughout the patent. See Energy Transp. Grp., Inc. v. William Demant Holding A/S, 697 F.3d 1342, 1350 (Fed. Cir. 2012). This use of the term "secured to" in the specification therefore confirms that the term encompasses circumstances when two components are attached via intervening parts.

7

That said, the Court agrees with MMS that the term "secured to" does not include all intervening parts. Dynocom's proposed construction -- "connected to with or without intervening parts" -- ignores the potential breadth of the phrase "intervening parts." The parties have not, however, adequately briefed if and how this requirement should be articulated. For present purposes, then, the Court construes the term "secured to" based on its plain and ordinary meaning as "fixed or attached to," subject to reconsideration at a later stage in the litigation. See Wi-LAN USA, Inc. v. Apple Inc., 830 F.3d 1374, 1385 (Fed. Cir. 2016) ("[A] district court may 'engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.'" (quoting Conoco, Inc. v. Energy & Env't Int'l, L.C., 460 F.3d 1349, 1359 (Fed. Cir. 2006))).

SO ORDERED.

/s/ PATTI B. SARIS
Hon. Patti B. Saris
United States District Judge